355 So.2d 1096 (1978)
Ulysses GANDY
v.
STATE of Mississippi.
No. 50288.
Supreme Court of Mississippi.
March 1, 1978.
*1097 Walker & Turner, Randolph Walker, West Point, for appellant.
A.F. Summer, Atty. Gen. by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, ROBERTSON and LEE, JJ.
LEE, Justice, for the Court:
Ulysses Gandy appeals from a conviction of manslaughter by culpable negligence and sentence of ten (10) years by the Circuit Court of Oktibbeha County. He assigns the following errors in the trial below:
(1) The court erred in overruling appellant's request for peremptory instruction and motion for new trial on the ground that the verdict was contrary to the overwhelming weight of the evidence.
(2) The court erred in overruling appellant's motion for mistrial because of a prejudicial statement made by the district attorney.
(3) The court erred in refusing defendant's requested Instruction No. D-18.
(4) The court erred in refusing defendant's requested Instruction No. D-15.
(5) The court erred in admitting in evidence the State's Exhibit No. 2.
*1098 On June 26, 1976, at approximately 10:30 p.m., appellant (age 29) was involved in a two-car collision on Mississippi State Highway 25 about four (4) miles south of Starkville. The highway runs in a north-south direction, appellant was driving his Pontiac automobile south on said highway, and Daniel Palmer, accompanied by two female companions, was driving a Toyota automobile north. The vehicles collided head-on. Palmer and the passengers in his car, all students at Mississippi State University, were killed. Appellant was not seriously injured. There were no witnesses to the collision except appellant.
About 1:15 p.m. on said date appellant drank one-fourth (1/4) pint of vodka. Later in the afternoon and evening he drank beer. Witnesses at the scene of the collision testified that they detected the odor of alcohol in the Pontiac automobile and on appellant, and that he was intoxicated. A blood sample was taken from appellant and a test of same at the Mississippi State Crime Laboratory indicated that it contained .246 ethyl alcohol by weight which by law is presumptive of intoxication. [Mississippi Code Annotated § 63-11-39 (1972)]. The attending physician for appellant and at least one other witness testified that they did not smell the odor of alcohol on appellant and, in their opinions, he was not intoxicated.
Six (6) persons, including three (3) officers who arrived at the scene, testified that both vehicles were in the northbound lane of the highway approximately seven (7) to eight (8) feet apart, that the Pontiac was headed south in the northbound lane, that the Toyota was headed north in the northbound lane, and that debris, glass and mud were in the northbound lane. Jerry Devine, the first witness to arrive at the scene of the collision, testified that the Toyota was in the northbound lane headed north and that the Pontiac was in the southbound lane headed south with the left wheels about the center line of the highway. The Pontiac was moved before photographs were taken.
Appellant testified that he was driving south in the southbound lane and the Toyota suddenly came over into the southbound lane and collided with his automobile.

I.

Did the court err in refusing appellant's request for a peremptory instruction, and, in the alternative, was the verdict of the jury contrary to the overwhelming weight of the evidence?
Appellant contends that his conviction is based upon (1) the apparent intoxication of appellant, (2) the accident apparently occurred in the deceased's lane of travel, and (3) the appellant did not have a valid driver's license at the time of the collision. He argues that there is no proof in the record that the alleged intoxication of appellant had any causal connection to the collision. He relies upon Cutshall v. State, 191 Miss. 764, 4 So.2d 289 (1941). However, the State's proof indicated that the collision occurred head-on between the vehicles in the northbound lane, which was the opposite lane of travel for appellant. The jury accepted that version of the case, and could reasonably believe that appellant's vehicle traveled south in the northbound lane as a result of his intoxication.
In passing upon the request for a peremptory instruction, all evidence favorable to the State must be assumed as true, together with reasonable inferences that may be drawn from same, and, if there is enough in the record to support a verdict, the request for peremptory instruction should be overruled. Warn v. State, 349 So.2d 1055 (Miss. 1977). Applying this rule, we are of the opinion that the evidence for the State is sufficient to support a verdict of guilty. Likewise, the verdict is not against the overwhelming weight of the evidence.

II.

Did the court err in overruling appellant's motion for mistrial because of a prejudicial statement made by the district attorney in his argument?
During his closing argument, the district attorney made the following statement:

*1099 "Culpable negligence is conduct which exhibits or manifests a wanton or reckless disregard for the safety of human lives and the conduct of the defendant Ulysses S. Gandy did disregard human life because three people were killed. And we are here today only concerned with young Daniel Palmer. Three people were killed and certainly that is disregard for the safety "
Appellant contends the statement by the district attorney that "three people were killed" in the collision constituted error, since appellant was being tried only for the death of Daniel Palmer. The testimony indicated that all three individuals in the Toyota were killed, and the same was properly admitted as a part of the res gestae. While the district attorney should not have alluded to the fact that all three persons were killed, the jury was certainly aware of their deaths and it is difficult to see how the jury could have been prejudiced by such statement. Ford v. State, 226 So. 378 (Miss. 1969). Consequently, there is no merit in this assignment.

III.

Did the court err in refusing appellant's requested Instruction D-18?
Instruction D-18 [Appendix I] told the jury that there are several factors which could be considered in determining whether or not defendant was intoxicated at the time of the accident, and then four such were specifically enumerated. The instruction was properly refused, since it was restrictive of other elements which the jury could consider in determining whether or not appellant was intoxicated. Further, the instruction had the effect of telling the jury to disregard testimony of certain witnesses and amounted to a comment on the evidence. Kearney v. State, 68 Miss. 233, 8 So. 292 (1890).

IV.

Did the court err in refusing appellant's requested Instruction D-15?
All instructions requested by the State and the defendant on culpable negligence related to abstract principles of law, except Instruction D-15 [Appendix II]. Appellant defended on the theory that he was driving his automobile south in the south lane of Highway 25 and that the Toyota suddenly came across the center line into the south lane and collided with his vehicle. Jerry Devine testified for appellant that he was the second person to arrive at the scene, and that the Pontiac was in the southbound lane with its left wheels on the center line. Instruction D-15 was the only instruction requested by appellant which submitted this theory of the case and his defense to the jury. The State argues the instruction was properly refused because it told the jury that, if they believed the deceased crossed the center line, he should be found not guilty, and that the Palmer vehicle may have been taking evasive action and may have crossed the center line for that reason. However, the instruction states, "crossed the center line and hit the defendant's car thereby causing the injuries sustained in this accident, ..." There is no proof in the record, either from the testimony or the physical facts, that any evasive action was taken by either vehicle. Failure to grant the Instruction D-15 constitutes reversible error.

V.

Did the trial court err in admitting into evidence State's Exhibit No. 2?
The State's Exhibit No. 2 [Appendix III] was prepared by Highway Patrolman Pearson, one of the investigating officers. It is a hand-drawn sketch of Mississippi State Highway 25 and shows the two automobiles in the northbound lane with the front of each automobile touching the other. Pearson testified that the sketch was made to identify the accident scene and to show the position of the automobiles and the roadway at the time of the accident. Objection to introduction of the sketch was overruled. An investigating officer may *1100 testify to the position of the vehicles when he saw them, marks on the highway, position of debris, glass and dirt. It is the province of the jury to determine from those physical facts the point of impact and how the collision occurred. The officer may not testify to the point of impact of the two vehicles, nor may he give his opinion as to the position of the vehicles at the time of the collision. Such testimony is speculative. Carruth v. Griffis, 220 Miss. 541, 71 So.2d 478 (1954).
On direct examination, Officer Pearson was asked his opinion where the collision occurred, without objection, and, on cross-examination, he was asked such opinion approximately five (5) different times. That testimony and the sketch would constitute reversible error, had objection been made and preserved properly. On retrial of the case, such testimony and Exhibit No. 2 should not be admitted in evidence.
For the reasons stated, the judgment of the lower court is reversed and the case is remanded for a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM and BOWLING, JJ., concur.

APPENDIX I

INSTRUCTION D (18)
The Court instructs the jury that there are several factors you may consider in determining whether or not the defendant was intoxicated at the time of the accident:
(1) The percent by weight of alcohol in the Defendant's blood;
(2) Whether the Defendant was reasonably alert and oriented;
(3) Whether the Defendant possessed a clearness of interlect [sic] and was capable of effective communication; and
(4) Whether Defendant was in physical control of himself.
The Court further instructs the jury that after considering the above factors you are not convinced beyond a reasonable doubt that the defendant was intoxicated at the time of the accident then you should so find.

APPENDIX II

INSTRUCTION D (15)
The Court instructs the jury that after hearing all the evidence in this case you believe that the deceased crossed the center line and hit the defendant's car thereby causing the injuries sustained in this accident, then it is your sworn duty to return a verdict of not guilty.
*1101